LAW OFFICES OF LES ZIEVE
DANIEL I. SINGER, ESQ. #227907
JENNIFER A. BENDER, ESQ. #244478
18377 Beach Blvd., Suite 210
Huntington Beach, CA 92648
Phone: (714) 848-7920
Facsimile: (714) 794-1779
Email: bankruptcy@zievelaw.com

Counsel for Movant

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SANTA ROSA DIVISION

| | |
|---|---|
| In re | Case No.: 11-13214 |
| Dean Gregory Asimos, | RS No. JAB10726 |
| Debtor. | Chapter 13 |
| Deutsche Bank National Trust Company, as trustee for DSLA Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, Series 2006-AR2, its assignees and/or successors in interest, | **DECLARATION OF ANA L. RODRIGUEZ IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY** |
| Movant, | **HEARING:** |
| vs. | Date: December 6, 2012 |
| Dean Gregory Asimos, David Burchard, Trustee, | Time: 9:00 a.m. |
| Respondents. | Place: 99 South "E" Street Santa Rosa, CA 95404 |

I, Ana L. Rodriguez, declare and state as follows:

1.    As to the following facts, I know them to be true.  Each is based upon my personal knowledge, unless otherwise indicated.  If called upon to testify in this or any other action, I could and would testify competently thereto.

2.      I am a Contract Manager for Ocwen Loan Servicing, LLC, the duly authorized and acting loan servicing agent on behalf of Deutsche Bank National Trust Company, as trustee for DSLA Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, Series 2006-AR2, its assignees and/or successors in interest ("Movant").

3.      I have access to the bankruptcy books and records for Movant that pertain to loans and extensions of credit given to Debtor concerning the Property.  I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate.  Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.  The business records are available for inspection and copies can be submitted to the Court if required.

4.      The instant bankruptcy case was filed by Debtor Dean Gregory Asimos on August 29, 2011 in the Northern Bankruptcy District of California, Case No. 11-13214.

5.      The subject real property securing Movant's first trust deed loan is generally described as 1040 East Macarthur Street, Sonoma, California 95476.

6.      Movant is the current payee of a Promissory Note ("Note" herein) dated July 31, 2006, in the principal amount of $650,000.00.  A true and correct copy of the Note is attached hereto as Exhibit "1."

7.      The Note is secured by a Deed of Trust dated July 31, 2006, a true and correct copy of which is attached hereto as Exhibit "2."  By virtue of assignment, Movant currently holds the beneficial interest in the Note and Deed of Trust, a true and correct copy of which is attached hereto as Exhibit "3."

8.      On November 1, 2011, Movant and Debtor entered into a Loan Modification Agreement.  A true and correct copy of the Loan Modification Agreement is attached hereto as Exhibit "4."  Under the terms of the Loan Modification Agreement, the pre-petition and post-petition arrears were added to the principal balance of the loan.

9.      With respect to Movant's Note and Deed of Trust, 12 post-petition payments have come due since November 1, 2011 through October 1, 2012.  A copy of the post-petition payment history is attached hereto as Exhibit "5."  To date, only 3 of the said payments have been received by Movant in good funds.  Therefore, the following post-petition payments are presently due and owing as of October 1, 2012.

|  |  |
|---|---|
| 9 MONTHLY PAYMENTS @ $2,896.92 | $26,072.28 |
| ATTORNEY FEES AND COSTS (THIS MOTION) | $801.00 |
| **TOTAL AMOUNT DUE POST-PETITION** | **$26,873.28** |

10.     The monthly payments on the Note come due on the first day of each month. Therefore, at least an additional **$2,896.92** will be due by the date of the hearing on the instant Motion.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 13ᵗʰ day of November 2012 at West Palm Beach, Florida.

Ana L. Rodriguez
Contract Manager

# ADJUSTABLE RATE NOTE

### (12-Month Treasury Average Index)
### (Payment and Rate Caps)

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THIS NOTE.**

| July 31, 2006 | Sonoma | CA |
|---|---|---|
| [Date] | [City] | [State] |

**1040 EAST MACARTHUR STREET, Sonoma, CA  95476**

[Property Address]



I HEREBY CERTIFY THIS TO BE A TRUE AND EXACT COPY OF THE ORIGINAL DOWNEY SAVINGS AND LOAN ASSOCIATION, F.A.

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 650,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Downey Savings and Loan Association, F.A.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

### (A) Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. Until the first day of the calendar month that immediately precedes the first payment date set forth in Section 3(A) below, I will pay interest at a yearly rate of **7.832 %**. Thereafter, until the first Interest Change Date (as defined in Section 2(B) below), I will pay interest at a yearly rate of **2.075 %**. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### (B) Interest Change Dates

The interest rate I will pay may change on the first day of **October**, **2006** and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Change Date." The new rate of interest will become effective on each Interest Change Date.

### (C) Interest Rate Limit

My interest rate will never be greater than **11.400 %**.

### (D) Index

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the monthly yields ("Monthly Yields") on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)." The Twelve-Month Average is determined by adding together the Monthly Yields for the most recent twelve months and dividing by 12.

The most recent Index figure available as of 15 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (E) Calculation of Interest Rate Changes

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding **three and four tenth(s)** percentage point(s) (**3.400 %**) to the Current Index. Subject to the limit stated in Section 2(C) above, the result of this addition will be my new interest rate until the next Interest Change Date.

Case: 11-13214    Doc# 52-2    Filed: 11/16/12    Entered: 11/16/12 11:20:10    Page 5 of 38

Exhibit "1"

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay Principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on **October 1 2006**. I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before Principal. If, on **September 1, 2046**, I still owe amounts under this Note, I will pay these amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O. Box 6060, 3501 Jamboree Rd, Newport Beach, CA 92658-6060** or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be U.S. $ **1,994.12**. This amount may change.

### (C) Monthly Payment Changes

My monthly payment may change as required by Section 3(D) below beginning on the first day of **October 2007**, and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

### (D) Calculation of Monthly Payment Changes

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new monthly payment will be in the amount of the Full Payment, except that my new monthly payment will be limited to an amount that will not be more than 7.5% greater or less than the amount of my last monthly payment due before the Payment Change Date.

### (E) Additions to My Unpaid Principal

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal. The Note Holder also will add interest on the amount of this difference to my unpaid Principal each month. The interest rate on the interest added to Principal will be the rate required by Section 2 above.

### (F) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal can never exceed a maximum amount equal to one hundred **fifteen** percent ( **115** %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that maximum due to the limited payments and interest rate increases. If so, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date at my current interest rate in substantially equal payments.

### (G) Required Full Payment

On the 5th Payment Change Date and on each succeeding 5th Payment Change Date thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again. I also will begin paying the Full Payment as my monthly payment on the final Payment Change Date.

## 4. NOTICE OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

1141N2.UFF (01/12/2001) 7970 VC

Initials: CA HA bndb

1/01

Case: 11-13214    Doc# 52-2    Filed: 11/16/12    Entered: 11/16/12 11:20:10    Page 6 of 38

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen (15)** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

Case: 11-13214    Doc# 52-2    Filed: 11/16/12    Entered: 11/16/12 11:20:10    Page 7 of 38

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
CHRIS ASIMAKOPOULOS            -Borrower

_____ (Seal)
HELEN ASIMOS                  -Borrower
*her attorney in fact*

_____ (Seal)
Chris Asimakopoulos          -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                                -Borrower

[Sign Original Only]

I141N4.UFF 10/16/2002 11215 JS                Page 4 of 4                Initials: _____  1/01

Case: 11-13214   Doc# 52-2   Filed: 11/16/12   Entered: 11/16/12 11:20:10   Page 8 of 38

Recording Requested By:
Downey Savings and Loan
Association, F.A.
Return To:
Downey Savings and Loan
Association, F.A.
P.O. Box 6060, 3501 Jamboree
Rd, Newport Beach, CA
92658-6060

Prepared By:
Downey Savings and Loan
Association, F.A.
P.O. Box 6060, 3501 Jamboree Rd,
Newport Beach, CA 92658-6060



**2006097576**

OFFICIAL RECORDS OF
SONOMA COUNTY
FIDELITY NAT'L TITLE CO. EEVE T. LEWIS
08/08/2006 08:00 TRD        **28** PGS
RECORDING FEE: 88.00
PAID



—————————[Space Above This Line For Recording Data]—————————

# DEED OF TRUST

Title Or
Escrow
APN: 1

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "**Security Instrument**" means this document, which is dated July 31, 2006
together with all Riders to this document.

(B) "**Borrower**" is CHRIS ASIMAKOPOULOS and HELEN ASIMOS, Husband and Wife

Borrower's address is 1421  Drake Avenue, Burlingame CA 94010
. Borrower is the trustor under this Security Instrument.

(C) "**Lender**" is Downey Savings and Loan Association, F.A.

Lender is a federally chartered savings association
organized and existing under the laws of the United States of America

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3005  1/01

VMP®-6(CA) (0207)
Page 1 of 15                    Initials: CA
            VMP MORTGAGE FORMS - (800)521-7291

Case: 11-13214    Doc# 52-2    Filed: 11/16/12    Entered: 11/16/12 11:20:10    Exhibit 9 of 38

Lender's address is **3501 Jamboree Road, Newport Beach, CA 92660**

Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is **DSL Service Company, A California Corporation**

**(E) "Note"** means the promissory note signed by Borrower and dated **July 31, 2006**
The Note states that Borrower owes Lender **six hundred fifty thousand and 00/100**
Dollars
(U.S. $ **650,000.00**      ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **September 1, 2046**
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [x] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [x] Other(s) [specify] |

**Rider to Promissory Note and Security
Instrument**

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

Initials: _CA_
_HA by CA_        Form 3005  1/01

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

|  **County** | of | **Sonoma** | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

**Legal Description attached hereto and made a part hereof**

Parcel ID Number: **128-042-030**
**1040 EAST MACARTHUR STREET**
**Sonoma**
("Property Address"):

which currently has the address of
[Street]
[City], California **95476**      [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

Initials: _CA_
_HA by CA_

-6(CA) (0207)          Page 3 of 15          Form 3005 1/01

Case: 11-13214   Doc# 52-2   Filed: 11/16/12   Entered: 11/16/12 11:20:10   Page 11 of 38

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Case: 11-13214    Doc# 52-2    Filed: 11/16/12    Entered: 11/16/12 11:20:10    Page 12 of 38

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Case: 11-13214    Doc# 52-2    Filed: 11/16/12    Entered: 11/16/12 11:20:10    Page 14 of 38

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Case: 11-13214    Doc# 52-2    Filed: 11/16/12    Entered: 11/16/12 11:20:10    Page 15 of 38

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

Case: 11-13214    Doc# 52-2    Filed: 11/16/12    Entered: 11/16/12 11:20:10    Page 16 of 38

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

-6(CA) (0207)      Initials: _CA_      Form 3005  1/01

Case: 11-13214    Doc# 52-2    Filed: 11/16/12    Entered: 11/16/12 11:20:10    Page 17 of 38

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Case: 11-13214   Doc# 52-2   Filed: 11/16/12   Entered: 11/16/12 11:20:10   Page 18 of 38

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Case: 11-13214    Doc# 52-2    Filed: 11/16/12    Entered: 11/16/12 11:20:10    Page 19 of 38

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

-6(CA) (0207)  Page 12 of 15  Initials: _CA_  _HA by CA_  Form 3005  1/01

Case: 11-13214    Doc# 52-2    Filed: 11/16/12    Entered: 11/16/12 11:20:10    Page 20 of 38

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Case: 11-13214     Doc# 52-2     Filed: 11/16/12     Entered: 11/16/12 11:20:10     Page 21 of 38

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
CHRIS ASIMAKOPOULOS        -Borrower

_____

_____ (Seal)
HELEN ASIMOS               -Borrower
*her attorney in fact*
*Chris Asimakopoulos*

_____ (Seal)        _____ (Seal)
                  -Borrower                                -Borrower

_____ (Seal)        _____ (Seal)
                  -Borrower                                -Borrower

_____ (Seal)        _____ (Seal)
                  -Borrower                                -Borrower

 -6(CA) (0207)          Page 14 of 15          Form 3005   1/01

Case: 11-13214    Doc# 52-2    Filed: 11/16/12    Entered: 11/16/12 11:20:10    Page 22 of 38

**State of California**
**County of** Sonoma

} ss.

On August 2, 2006 before me, Debbie Shelton, Notary Public

personally appeared

CHRIS ASIMAKOPOULOS ~~& HELEN ASIMOS~~

, ~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Debbie Shelton_ (Seal)

DEBBIE SHELTON
COMM. #1582890
NOTARY PUBLIC - CALIFORNIA
SONOMA COUNTY
My Comm. Expires June 25, 2009
MCI1

Initials: _CA_
_HA by CA_

Escrow No.:
Locate No.:
Title No.: 0(

# EXHIBIT "A"

The land referred to herein is situated in the State of California, County of Sonoma, Unincorporated Area, and is described as follows:

Parcel One:

Commencing at an iron pipe at the intersection of the Northerly line of Germany Street with the Easterly lone of Seventh Street East, being the Southwesterly corner of lot 522 in the former Pueblo or Ex-City of Sonoma; thence along the Northerly line of Germany Street South 83°30' East, 262 feet to the true point of beginning of the parcel to be herein described; thence from said point of beginning and continuing South 83°30' East and along the Northerly line of Germany Street 67 feet to a point; thence North 6°30' East 247.26 feet to a point; thence South 30°13' West 166.58 feet to a point; thence South 6°30' West 94.75 feet to the true point of beginning.

Parcel Two:

Together with a non-exclusive easement for general road and utility purposes 25 feet wide on the Westerly and Northerly sides of the above described parcel of land.



**2010055590**

OFFICIAL RECORDS OF
SONOMA COUNTY
JANICE ATKINSON

WHEN RECORDED MAIL TO:

After Recording please return to:

Western Progressive, LLC
P.O. Box 100029
Kennesaw, GA 30156

Downey loan
Commitment #:

GENERAL PUBLIC
07/06/2010 09:54 ASGTTD
RECORDING FEE: $13.00
PAID

**1** PG



## Corporation Assignment of Deed of Trust

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to *Deutsche Bank National Trust Company, as trustee For the registered holders of DSLA Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, Series 2006-AR2.*

All beneficial interest under that certain Deed of Trust dated **7/31/2006** ,executed by

**CHRIS ASIMAKOPOULOS AND HELEN ASIMOS HUSBAND AND WIFE**

Trustor, to **DSL SERVICE COMPANY, A CALIFORNIA CORPORATION**, Trustee, and recorded as Instrument No. *2006097576* On *8/8/06* in book , page , of Official Records in the County Recorders office of **SONOMA** County, **CALIFORNIA** describing land therein as:

### AS DESCRIBED ON DEED OF TRUST REFERRED TO HEREIN.

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed Of Trust.

DOWNEY SAVINGS AND LOAN ASSOCIATION, F.A.

**Brian Workman**
**Manager Record Retention**

STATE OF CALIFORNIA
COUNTY OF ORANGE     SS

Capacity Claimed By Signer: Manager Record Retention

On 08/31/2006 before me, **CASSANDRA B ANDERSON,** Notary Public, personally appeared **Brian Workman, personally known to me** (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that **he**/she executed the same in **his**/her authorized capacity, and that by **his**/her signature on the instrument the person, or entity upon behalf of which the person acted, executed the same.
WITNESS MY hand and official seal.

Signature of Notary
CASSANDRA B ANDERSON, Notary Public

CASSANDRA B. ANDERSON
Commission # 1659773
Notary Public — California
Orange County
My Comm. Expires Apr 21, 2010

corpasgn.ifd 11/27/98 jrw3259

RECORDING REQUESTED BY
LAW OFFICES OF LES ZIEVE
18377 Beach Blvd., Ste. 210
Huntington Beach, CA   92648

WHEN RECORDED MAIL TO
NAME  BANKRUPTCY DEPARTMENT
LAW OFFICES OF LES ZIEVE

MAILING
ADDRESS  18377 Beach Blvd.,
Ste. 210
CITY, STATE  Huntington Beach, CA
ZIP CODE  92648



**2012056515**

OFFICIAL RECORDS OF
SONOMA COUNTY
JANICE ATKINSON

TITLE COURT SERVICE
06/14/2012 09:15 ASGTTD
RECORDING FEE: $16.00
PAID

**2** PGS

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

## T I T L E(S)

ASSIGNMENT OF DEED OF TRUST

Prepared by: Nadine Alvarez
When Recorded Mail To:
Ocwen Loan Servicing, LLC
1661 Worthington Road, Suite 100
West Palm Beach, Florida, 33409
Phone Number: 561-682-8835
647025513882
Attorney Code: 24044 BR          **ASSIGNMENT OF DEED OF TRUST**
                                 **CALIFORNIA**

    This **ASSIGNMENT OF DEED OF TRUST** from **DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE REGISTERED HOLDERS OF DSLA MORTGAGE LOAN TRUST MORTGAGE LOAN PASS-THROUGH CERTIFICATES, SERIES 2006-AR2,** whose address is c/o Ocwen Loan Servicing, LLC. 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409 ("Assignor) to **DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR DSLA MORTGAGE LOAN TRUST MORTGAGE LOAN PASS-THROUGH CERTIFICATES, SERIES 2006-AR2** whose address is c/o Ocwen Loan Servicing, LLC. 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409 ("Assignee").

    For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Assignor does by these presents hereby grant, bargain, sell, transfer and set over unto the Assignee, its successors, transferees and assigns forever, in trust, all of the right, title and interest of said Assignor in and to the following deed of trust describing land therein, duly recorded in the Office of the County Recorder of**SONOMA** County, State of **CALIFORNIA**, as follows;

Trustor: CHRIS ASIMAKOPOULOS AND HELEN ASIMOS
Trustee: DSL SERVICE COMPANY
Beneficiary: DOWNEY SAVINGS AND LOAN ASSOCIATION, F.A.
Document Date: JULY 31, 2006                          Amount: $ 650,000.00
Date Recorded: AUGUST 08, 2006                       Document/Instrument/Entry Number:
Property Address: 1040 EAST MACARTHUR STREET, SONOMA, CA

*Property more particularly described in the above referenced recorded Deed of Trust*
This Assignment is made without recourse, representation or warranty.
DATED: JUNE 05, 2012
**DEUTSCHE BANK NATIONAL TRUST COMPANY,**
**AS TRUSTEE FOR THE REGISTERED HOLDERS OF**
**DSLA MORTGAGE LOAN TRUST MORTGAGE LOAN**
**PASS-THROUGH CERTIFICATES, SERIES 2006-AR2,**
**BY ITS ATTORNEY IN FACT**
**OCWEN LOAN SERVICING, LLC.**

BY: _____
NAME: Leticia N. Arias
TITLE: Contract Manager

"This instrument is being recorded as an
ACCOMMODATION ONLY, with no
Representation as to its effect upon title"

State of FLORIDA
County of PALM BEACH

*Jami Dorobiala*

On JUNE 05, 2012, before me, _____ personally appeared Leticia N. Arias personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
**I certify under PENALTY OF PERJURY under the laws of the State of Florida that the foregoing paragraph is true and correct.**
WITNESS my hand and official seal.

Signature of Notary          Jami Dorobiala

NOTARY PUBLIC-STATE OF FLORIDA
Jami Dorobiala
Commission # DD878994
Expires: APR. 08, 2013
BONDED THRU ATLANTIC BONDING CO., INC.

Ocwen Loan Servicing, LLC
P.O. Box 24737
West Palm Beach, Florida 33416-4737
O C W E N *(Do not send correspondence or payments to the above address.)*

WWW.OCWEN.COM

## PAYMENT REMITTANCE INFORMATION

1. Make checks payable to Ocwen Loan Servicing, LLC.
2. Always include your loan number with your payment.
3. The down payment must be in the form of certified funds.

**OVERNIGHT DELIVERY (Money Order & Certified Checks Only)**
OCWEN LOAN SERVICING, LLC
ATTN: CASHIERING DEPARTMENT
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

**MONEY GRAM**
RECEIVER CODE: ̲ ̲ ̲ ̲
PAYABLE TO: OCWEN LOAN SERVICING, LLC
CITY: ORLANDO
STATE: FLORIDA
REFERENCE: LOAN NUMBEI
AGENT LOCATER: (

**BY WUOC**
Code City: Ocwen
State: FL
Reference: Loan #

**BANK WIRE**
BANK: Wells Fargo Bank, NA
San Francisco, California
ABA: ̲ ̲ ̲ ̲ ̲ ̲ ̲
ACCOUNT NAME: Ocwen Loan Servicing, LLC
ACCOUNT NUMBER:
REFERENCE: Loan Number, Property Address, and Borrower Name

Email: ̲ ̲ ̲ ̲ ̲ ̲ ̲ with the details of the wire.

### LOAN MODIFICATION AGREEMENT

Ocwen Loan Servicing, LLC ("Ocwen") is offering you this Loan Modification Agreement ("Agreement"), dated 07/27/11, which modifies the terms of your home loan obligations as described in detail below:

A.    the Mortgage, Deed of Trust, or Security Deed (the "Mortgage"), dated and recorded in the public records of Sonoma County, and

B.    the Note, of the same date and secured by the Mortgage, which covers the real and personal property described in the Mortgage and defined therein as the "Property", located at 1040 East Macarthur Street Sonoma, CA 95476.

Pursuant to our mutual agreement to modify your Note and Mortgage and in consideration of the promises, conditions, and terms set forth below, the parties agree as follows:

1.    In order for the terms of this modification to become effective, you promise to make an initial payment of $2,896.95 on or before 9/1/11 and one (1) equal monthly payment of principal and interest in the amount of $2,257.01 to Ocwen ("Trial Period") beginning on 10/1/11.

2.    You agree that, at the end of the Trial Period, the new principal balance due under your modified Note and the Mortgage will be $507,011.10. Upon modification, your Note will become current and will not be in default.

3.    Any payments due for taxes or insurance will be your responsibility in addition to the payments of principal and interest required under the terms of this modification. If this loan is currently escrowed, Ocwen will continue to collect the required escrow amounts with your monthly principal and interest payment.

4.    If you successfully complete the Trial Period, your loan will automatically be modified pursuant to the terms of this Agreement (the "Modification"). However, if you fail to send any full payment on or before the respective due date during the Trial Period, the Trial Period will immediately terminate and the Modification offer will be null and void. Acceptance and application of late payments during the Trial Period does not waive Ocwen's right to terminate the Trial Period, nullify the Modification, or resume foreclosure or other activities related to the delinquency of the loan under its original terms.

300405

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

*NMLS # 1852*

Ocwen Loan Servicing, LLC
P.O. Box 24737
West Palm Beach, Florida 33416-4737
O C W E N (Do not send correspondence or payments to the above address.)

WWW.OCWEN.COM

5.  After the Trial Period expiration, you promise to make payments of principal and interest on the same day of each succeeding month until all amounts owed under the Note and Modification are paid in full.

6.  Upon Modification, the new amount payable under your Note and the Mortgage will be increased to the total amount of debt owed on your loan.

7.  Upon Modification, the annual rate of interest charged on the unpaid principal balance of your loan will be converted to a fixed rate of 4.03167%. This rate will remain in effect until the maturity of your loan.

8.  If you sell your property, refinance or otherwise payoff your loan during the 12 months following the date of Modification, the Modification will be voidable at the sole option of Ocwen and all amounts owed under the obligations existing prior to the Modification will be due and owing.

9.  You will comply with all other covenants, agreements and requirements of your Mortgage, including without limitation, the covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds and all other payments that you are obligated to make under the Mortgage, except as otherwise provided herein.

10. You understand and agree that:

    (a) All the rights and remedies, stipulations and conditions contained in your Mortgage relating to default in the making of payments under the Mortgage will also apply to default in the making of the modified payments hereunder.

    (b) All covenants, agreements, stipulations and conditions in your Note and Mortgage will remain in full force and effect, except as herein modified, and none of the your obligations or liabilities under your Note and Mortgage will be diminished or released by any provisions hereof, nor will this Agreement in any way impair, diminish or affect any of Ocwen's rights under or remedies on your Note and Mortgage, whether such rights or remedies arise there under or by operation of law. Also, all rights of recourse to which Ocwen is presently entitled against any property or any other persons in any way obligated for, or liable on, your Note and Mortgage are expressly reserved by Ocwen.

    (c) Any expenses incurred in connection with the servicing of your loan, but not yet charged to your account as of the date of this Agreement, may be charged to your account after the date of this Agreement.

    (d) Nothing in this Agreement will be understood or construed to be a satisfaction or release in whole or in part of your Note and Mortgage.

    (e) In the event that a foreclosure is pending, the foreclosure action will not be dismissed. However, Ocwen will take reasonable action to place it on hold pending your completion of the Trial Period. If the Trial Period is successfully completed, any pending foreclosure action will be dismissed.

    (f) During the Trial period, your loan will continue to be delinquent. As a result, late fees may be charged and credit reporting will continue pursuant to the original terms of your Note.

    (g) You agree to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Ocwen, will bind and inure to your heirs, executors, administrators and assigns.

    (h) You understand that this agreement is legally binding and that it affects your rights. You confirm that you have had the opportunity to obtain, independent legal counsel concerning this Agreement and are signing this Agreement voluntarily and with full understanding of its contents and meaning.

    (i) Corrections and Omissions: You agree to execute such other and further documents as may be reasonably necessary to consummate the transactions contemplated herein or to perfect the liens and security interests intended to secure the payment of the loan evidenced by the Note.

Ocwen Loan Servicing, LLC  _____

By: _____

*Chris Asimakopoulos*
Chris Asimakopoulos

*Dean Asimis*, Successor Trustee
The Estate of Helen Asimos

8/18/2011

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.

NMLS # 1852

| DATE DUE | AMT DUE | DATE PAID | AMT PAID |
|----------|---------|-----------|----------|
| 11/1/2011 | 2,896.95 | 11/10/2011 | 2,896.95 |
| 12/1/2011 | 2,896.95 | 1/31/2012 | 2,896.96 |
| 1/1/2012 | 2,896.96 | 2/29/2012 | 2,896.00 |
| 2/1/2012 | 2,896.92 | | |
| 3/1/2012 | 2,896.92 | | |
| 4/1/2012 | 2,896.92 | | |
| 5/1/2012 | 2,896.92 | | |
| 6/1/2012 | 2,896.92 | | |
| 7/1/2012 | 2,896.92 | | |
| 8/1/2012 | 2,896.92 | | |
| 9/1/2012 | 2,896.92 | | |
| 10/1/2012 | 2,896.92 | | |
| TOTAL | 34,763.14 | | 8,689.91 |

BK FILED:  8/29/2011
LOAN MODIFICATION:  11/1/2011

RECORDING REQUESTED BY:



2007003718

*42*

OFFICIAL RECORDS OF
SONOMA COUNTY
JANICE ATKINSON

GENERAL PUBLIC
01/10/2007 15:19 DEED
RECORDING FEE: 10.00
PAID

2 PGS



When Recorded Mail Document
and Tax Statement To:

Mrs. Helen Asimos
1421 Drake Avenue
Burlingame, CA  94010

APN: _____

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# GRANT DEED

The undersigned grantor(s) declare(s)
Documentary transfer tax is $ _____
    [    ]   computed on full value of property conveyed, or
    [    ]   computed on full value less value of liens or encumbrances remaining at time of sale,
    [    ]   Unincorporated Area    City of **Sonoma**,
**"This conveyance transfers the grantor's interest into his or her revocable living trust, R & T 11911."**

**FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,**   Chris Asimakopoulos and Helen Asimos, husband and wife, as Joint Tenants

**hereby GRANT(S) to**   Helen Asimos, Trustee of the Helen Asimos Revocable Trust dated April 7, 2004

**the following described real property in the** City of **Sonoma**, County of **Sonoma**, State of **California**:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

DATED:  August 2, 2006



Chris Asimakopoulos

Helen Asimos

STATE OF CALIFORNIA                )
COUNTY OF ____Sonoma____        )
ON ___August 2, 2006_____ before me,
Debbie Shelton, Notary Public
(here insert name and title of the officer), personally
appeared ___Chris Asimakopoulos and Helen
Asimos_____,
~~personally known to~~ me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted,
executed the instrument.

> DEBBIE SHELTON
> COMM. #1582890
> NOTARY PUBLIC -CALIFORNIA
> SONOMA COUNTY
> My Comm. Expires June 25, 2009
>
> MC11      MC11

Witness my hand and official seal.

Signature _____ (Seal)

**MAIL TAX STATEMENTS AS DIRECTED ABOVE**

FD-213 (Rev 7/96)                            GRANT DEED
(grant)(06-06)

Description: Sonoma,CA Document-Year.DocID 2007.3718 Page: 1 of 2
Order:

# EXHIBIT "A"

The land referred to herein is situated in the State of California, County of Sonoma, Unincorporated Area, and is described as follows:

Parcel One:

Commencing at an iron pipe at the intersection of the Northerly line of Germany Street with the Easterly lone of Seventh Street East, being the Southwesterly corner of lot 522 in the former Pueblo or Ex-City of Sonoma; thence along the Northerly line of Germany Street South 83°30' East, 262 feet to the true point of beginning of the parcel to be herein described; thence from said point of beginning and continuing South 83°30' East and along the Northerly line of Germany Street 67 feet to a point; thence North 6°30' East 247.26 feet to a point; thence South 30°13' West 166.58 feet to a point; thence South 6°30' West 94.75 feet to the true point of beginning.

Parcel Two:

Together with a non-exclusive easement for general road and utility purposes 25 feet wide on the Westerly and Northerly sides of the above described parcel of land.

Description: Sonoma,CA Document-Year.DocID 2007.3718 Page: 2 of 2
Order: 100176525 Comment:

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

John J. Alkazin, Esq.
601 California St. #1600
San Francisco, CA 94108



GENERAL PUBLIC
03/30/2007 08:03 AFFD
RECORDING FEE: 16.00
PAID

2007036183

OFFICIAL RECORDS OF
SONOMA COUNTY
JANICE ATKINSON

**4** PGS



MAIL TAX STATEMENTS TO:

Dean Asimos
1421 Drake Avenue
Burlingame, CA 94010

APN:

    1040 East MacArthur Street
    Sonoma, CA

### AFFIDAVIT OF DEATH OF TRUSTEE

        Dean Asimos, being of legal age, being duly sworn, deposes and says:

        1.  Helen Asimos, as Trustor, executed the Helen Asimos Revocable Trust Agreement on April 7, 2004, and designated herself as Trustee of said Trust.

        2.  Helen Asimos, who is also known as Helen T. Asimos and who is the decedent named in the attached certified copy of Certificate of Death, died on December 25, 2006.

        3.  On August 2, 2006, Chris Asimakopoulos and Helen Asimos executed a Grant Deed which was recorded on January 10, 2007, as Document No. 2007003718 in the official records of the office of the County Recorder of Sonoma County, California, conveying to Helen Asimos as Trustee of the Helen Asimos Revocable Trust Agreement dated April 7, 2004, the property situated in the unincorporated area of the County of Sonoma, State of California, described as follows:

Parcel One:

Commencing at an iron pipe at the intersection of the Northerly line of Germany Street with the Easterly line of Seventh Street East, being the Southwesterly corner of lot 522 in the former Pueblo or Ex-City of Sonoma; thence along the northerly line of Germany Street South 83°30' East, 262 feet to the true point of beginning of the parcel to be herein described; thence from said point of beginning and continuing South 83°30' East and along the Northerly line of Germany Street 67 feet to a point; thence North 6°30' East 247.26 to a point; thence South 30°13' West 166.58 feet to a point; thence South 6°30' West 94.75 feet to the true point of beginning.

-1-

Description: Sonoma,CA Document-Year.DocID 2007.36183 Page: 1 of 4
Order:

Parcel Two:

Together with a non-exclusive easement for general road and utility purposes 25 feet wide on the Westerly and Northerly sides of the above described parcel.

Commonly known as 1040 East MacArthur Street, Sonoma, California. Sonoma County APN 128-042-030.

4. The Helen Asimos Revocable Trust Agreement dated April 7, 2004, provides that, upon the death of Helen Asimos, affiant Dean Asimos is the Successor Trustee of said Trust.

5. Dean Asimos has accepted the office of Trustee and is now the duly qualified and acting Trustee of said Trust.

6. The Trust has not been revoked, modified, or amended in any manner which would cause any representations contained herein to be incorrect.

7. Under the terms of the Trust, the undersigned, as Trustee, has full power to manage and control all Trust assets, to sell any Trust property for cash or on deferred payments, to borrow money, to mortgage any trust property, and to convey Trust assets to the beneficiaries entitled to distribution of the Trust.

8. This document is intended to serve as a "Certification of Trust" under California Probate Code §18100.5. Its purpose is to certify the existence of the Trust and the identity and powers of the Trustee so that the Trustee can deal with third parties, such as financial institutions, stock transfer agents, brokerage houses, title companies, insurance companies, and others, without disclosing the entire Trust, which is a private and confidential document.

9. All third parties dealing with the undersigned as Trustee may rely on this document as a true statement of the provisions of the Trust described herein as of the date this document is presented to such third party, regardless of the date of execution of this document.

Dated:  MARCH 21ST , 2007.


_Dean Asimos_
Dean Asimos

-2-

Description: Sonoma,CA Document-Year.DocID 2007.36183 Page 2 of 4
Order:

STATE OF CALIFORNIA )
                                              ) ss.
COUNTY OF  SAN MATEO          )

      Subscribed and sworn to (or affirmed) before me,

Jonathan A. Taylor_____, a Notary Public for the

State of California, on ___March 21_____, 2007, by Dean

Asimos,  personally known to me or proved to me on the basis of

satisfactory evidence to be the person who appeared before me.

JONATHAN A. TAYLOR
Commission # 1422283
Notary Public - California
San Mateo County
My Comm. Expires Jun 5, 2007

Notary Public for California

−3−

Description: Sonoma,CA Document-Year.DocID 2007.36183 Page: 3 of 4
Order:

*47*

# COUNTY OF SAN MATEO
## HEALTH DEPARTMENT
### SAN MATEO, CALIFORNIA

**CERTIFICATE OF DEATH**

STATE FILE NUMBER     LOCAL REGISTRATION NUMBER

| | | |
|---|---|---|
| 1. NAME OF DECEDENT – FIRST (Given) **HELEN** | 2. MIDDLE **T** | 3. LAST (Family) **ASIMOS** |

AKA, ALSO KNOWN AS — Include full AKA (FIRST, MIDDLE, LAST)

4. DATE OF BIRTH mm/dd/yyyy **11/14/1937** — 5. AGE Yrs. **69** — 6. SEX **F**

9. BIRTH STATE/FOREIGN COUNTRY **CALIFORNIA** — 10. SOCIAL SECURITY NUMBER — 11. EVER IN U.S. ARMED FORCES? [X] NO — 12. MARITAL STATUS **MARRIED** — 7. DATE OF DEATH mm/dd/yyyy **12/25/2006** — 8. HOUR (24 Hours) **1135**

13. EDUCATION **HS GRADUATE** — 14/15. WAS DECEDENT HISPANIC/LATINO/SPANISH? [X] NO — 16. DECEDENT'S RACE **CAUCASIAN**

17. USUAL OCCUPATION — Type of work **OWNER** — 18. KIND OF BUSINESS OR INDUSTRY **CATERING** — 19. YEARS IN OCCUPATION **15**

20. DECEDENT'S RESIDENCE (Street and number or location) **1421 DRAKE AVENUE**

21. CITY **BURLINGAME** — 22. COUNTY/PROVINCE **SAN MATEO** — 23. ZIP CODE **94010** — 24. YEARS IN COUNTY **40** — 25. STATE/FOREIGN COUNTRY **CALIFORNIA**

26. INFORMANT'S NAME, RELATIONSHIP **CHRIS ASIMOS, HUSBAND** — 27. INFORMANT'S MAILING ADDRESS **1421 DRAKE AVENUE, BURLINGAME, CA 94010**

28. NAME OF SURVIVING SPOUSE – FIRST **CHRIS** — 29. MIDDLE **-** — 30. LAST (Maiden Name) **ASIMOS**

31. NAME OF FATHER – FIRST **GEORGE** — 32. MIDDLE **-** — 33. LAST **LEONARD** — 34. BIRTH STATE **GREECE**

35. NAME OF MOTHER – FIRST **KATHERINE** — 36. MIDDLE **-** — 37. LAST **REIZOPOULOS** — 38. BIRTH STATE **TURKEY**

39. DISPOSITION DATE mm/dd/yyyy **12/29/2006** — 40. PLACE OF FINAL DISPOSITION **GREEK ORTHODOX MEMORIAL PARK 1148 EL CAMINO REAL, COLMA, CA 94014**

41. TYPE OF DISPOSITION(S) **BU** — 42. SIGNATURE OF EMBALMER ▶ **STEPHEN MULLER** — 43. LICENSE NUMBER **E`**

44. NAME OF FUNERAL ESTABLISHMENT **DUGGAN'S SERRA MORTUARY** — 45. LICENSE NUMBER **FD 1098** — 46. SIGNATURE OF LOCAL REGISTRAR ▶ **SCOTT MORROW, MD** — 47. DATE mm/dd/yyyy **12/28/2006**

101. PLACE OF DEATH **OWN RESIDENCE** — 102. IF HOSPITAL, SPECIFY ONE — 103. IF OTHER THAN HOSPITAL, SPECIFY ONE

104. COUNTY **SAN MATEO** — 105. FACILITY ADDRESS OR LOCATION WHERE FOUND **1421 DRAKE AVENUE** — 106. CITY **BURLINGAME**

107. CAUSE OF DEATH — IMMEDIATE CAUSE (a) **METASTATIC LUNG CANCER** — 108. DEATH REPORTED TO CORONER? [X] NO — 3 YRS — 06-3043-L

111. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH **NONE**

112. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 111? **NONE**

113. IF FEMALE, PREGNANT IN LAST YEAR? [X] NO

114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED — 115. SIGNATURE AND TITLE OF CERTIFIER ▶ **JOHN ALDEN HAYWARD M.D.** — 116. LICENSE NUMBER **G61995** — 117. DATE mm/dd/yyyy **12/28/2006**

118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE **JOHN ALDEN HAYWARD M.D. 2940 WHIPPLE AVENUE, REDWOOD CITY, CA 94062**

119. Decedent Attended Since **11/28/2006** — Decedent Last Seen Alive **12/14/2006**

121. MANNER OF DEATH — 122. INJURED AT WORK? — 123. INJURY DATE mm/dd/yyyy — 123. HOUR (24 Hours)

124. PLACE OF INJURY

125. DESCRIBE HOW INJURY OCCURRED

126. LOCATION OF INJURY

126. SIGNATURE OF CORONER / DEPUTY CORONER — 127. DATE mm/dd/yyyy — 128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER

STATE REGISTRAR   A   B   C   D   E    *012005000391417*    FAX AUTH. #    CENSUS TRACT

## CERTIFIED COPY OF VITAL RECORDS

STATE OF CALIFORNIA
COUNTY OF SAN MATEO } SS    DATE ISSUED    **DEC 2 9 2006**

This is a true and exact reproduction of the document officially registered and placed on file in the office of the SAN MATEO COUNTY HEALTH DEPARTMENT.

*Smorrow MD*
**SCOTT MORROW, M.D.**
HEALTH OFFICER AND REGISTRAR

*000466401*

This copy not valid unless prepared on engraved border displaying seal and signature of County Health Officer.



In re __Dean Gregory Asimos__ ,    Case No. _____
                                    Debtor

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **Detached Home**<br>**1040 E. MacArthur St.**<br>**Sonoma, CA 95476** | **Fee Simple** | - | **607,600.00** | **889,872.80** |

|  |  |
|---|---|
| Sub-Total > | **607,600.00** | (Total of this page) |
| Total > | **607,600.00** | |

__0__   continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules.)

Exhibit "8"

Software Copyright (c) 1996-2011 - CCH INCORPORATED - www.bestcase.com

In re **Dean Gregory Asimos**                                                     ,      Case No. _____
                              Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. **xxxxxx8976**<br><br>**Mercedes-Benz Financial**<br>**P.O. Box 9001680**<br>**Louisville, KY 40290** | | - | **January 2009**<br><br>**Auto**<br><br>**2006 Mercedes Benz S430**<br>**Mileage: 185,456**<br>**Fair Condition** | | | | | |
| | | | Value $            **13,400.00** | | | | **45,000.00** | **31,600.00** |
| Account No. **xxxxxx5138**<br><br>**Ocwen Loan Servicing**<br>**P.O. Box 6440**<br>**Carol Stream, IL 60197** | | - | **First Mortgage**<br><br>**Detached Home**<br>**1040 E. MacArthur St.**<br>**Sonoma, CA 95476** | | | | | |
| | | | Value $          **607,600.00** | | | | **764,872.80** | **157,272.80** |
| Account No.<br><br>**Vincent P O'Leary**<br>**438 Hillsborough Blvd.**<br>**San Mateo, CA 94401** | | - | **2009**<br><br>**Second Mortgage**<br><br>**Detached Home**<br>**1040 E. MacArthur St.**<br>**Sonoma, CA 95476** | | | | | |
| | | | Value $          **607,600.00** | | | | **125,000.00** | **125,000.00** |
| Account No. | | | | | | | | |
| | | | Value $ | | | | | |

**0**___ continuation sheets attached

| | Subtotal<br>(Total of this page) | **934,872.80** | **313,872.80** |
|---|---|---|---|
| | Total<br>(Report on Summary of Schedules) | **934,872.80** | **313,872.80** |

Software Copyright (c) 1996-2011 - CCH INCORPORATED - www.bestcase.com